CARLOS BRISENO v. THE STATE.

No. 716.   Decided October 19, 1910.

**Burglary—Accomplice Testimony—Corroboration.**

Where, upon trial of burglary, the accomplice testimony was that the defendant was present at the time of the alleged breaking and theft, and the corroborating testimony showed that the defendant was found with the other parties who confessed the burglary and who carried with them the stolen goods, and the defendant placed himself with these parties shortly before the burglary, but denied the burglary itself, the testimony was sufficient to tend to connect the defendant with the commission of the offense.

Appeal from the District Court of El Paso.   Tried below before the Hon. Jas. R. Harper.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Claude B. Hudspeth* and *Robert L. Holliday,* for appellant.—On question of want of corroboration of accomplice testimony: Zollicoffer v. State, 16 Texas Crim. App., 312.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for burglary, with a penalty of two years confinement in the penitentiary.

The only complaint made by appellant in motion for new trial is that the evidence is insufficient to support the verdict in that the testimony of the two accomplices used by the State was not sufficiently corroborated to authorize a conviction.   There are no bills of exception in the record, and no complaint is made of the charge of the court.   The statement of facts discloses that one Levison had a tailoring business in El Paso, and that on February 17, 1910, the said Levison left his place of business at about 9 o'clock at night; that he locked up his house when he left, and that he returned in about thirty or forty minutes and found his house had been broken open and goods taken from it of the value of between three and four hundred dollars.   He did not know who broke into his house.   That about an hour and a half thereafter the defendant and others were brought by the officer to his store, as well as the property that had been stolen.   One Brooks testified that on the night of the burglary he, the defendant, Velarde, Manual Lopez and another boy whose name he did not know, went to the saloon on Broadway and stayed there a while, and then went out and went to the El Toro saloon.   The witness continuing said: "I went outside the saloon after a little while on the corner when Manual Lopez went out.   I saw him break the lock, and this boy Carlos Briseno and the other boy followed him into the store.   When Lopez broke the lock this defendant was in

the saloon. Lopez came back and told him that the lock was broken; then the defendant left, and they all went in one by one. They came out with the goods, and there was a little Mexican boy, messenger boy, who came along. This defendant had some of the goods. I did not hear any conversation between the defendant and Lopez prior to the time the lock was broken." On cross-examination he testified: "I never went into the house, but I am charged by indictment for this burglary. I have not been promised by the State to be turned loose if I testified in this case. Lopez broke the lock and this defendant was in the saloon, and Lopez went back after him. All this time I was standing on the corner; I didn't go in." Continuing he says: "I followed the boys to the house. When we were arrested I had some of the goods; I had a pair of pants and an overcoat. Manual Lopez gave them to me in the house. I saw Briseno with the goods. He had the tailor goods patterns. He got them out of the tailor shop. I saw him with them after he came out of there. They were tailor goods; don't know what kind. He took them down to the house." Manual Lopez testified as follows: "I remember the burglary of Mr. Levison's place on February 17 last. I know this defendant Carlos Briseno. We went into the place, myself, Silvia, and this defendant; we took all the goods we could find. Carlos Briseno knew before we went in there that we were going to do it. I broke the lock, Silvia and myself; then I notified this defendant and he went in." On cross-examination he testified: "I am indicted for burglary in this case. I have plead guilty of the charge. This defendant was with us when we broke the lock. I am sure of that, and Silvia, too, and Luis Velarde and Tom Brooks. All of us were there. No, Tom Brooks was not at the door with us when we broke the lock; he and Velarde were watching for the police. As soon as we broke the lock Silvia went and told the defendant, and we went in. Silvia and myself broke the lock, and the defendant was then in the saloon. The defendant was not there with us, but he was in the saloon waiting for us to break the lock, get through breaking the lock. He was not at the door when the lock was broken. He was at the saloon."

Valencia, witness for the State, testified as follows: "I am a police officer and held that position during the month of February last. I remember this burglary. I went to the house where the goods were. I had never seen this defendant only that night. I didn't go inside the house, Cooper and another man went in. I was watching on the outside at an open place in the street so they couldn't get out. Cooper, Gonzales, and myself took them all out of there. The defendant was brought out of the house by the officers." On cross-examination he testified: "I believe I would know all five of the men who were in the house. I didn't go in the house. Every one of them that came outside had some goods in his possession. This defendant had goods in his possession. He had pants and coats. When I saw this defendant he was being brought out by the policemen. I remember positively

this man had goods in his possession, but I don't know what kind. I was with this defendant about fifteen minutes. It was late at night when I saw him, and not very light there."

Stanley Good, witness for the State, testified: "My name is N. S. Good. I am a police officer and was during last February. I was at the station the night this man was brought there. I don't remember how many of them were brought there. There was some clothing brought there at the same time. I think the defendant looks like one of the men brought there on the night of the burglary."

Carlos Briseno, defendant, being sworn, testified as follows: "In regard to this burglary, I want to say that I know nothing about it. Luis Velarde and myself went to the Toro saloon; we there met Manual Lopez, Silvia and Tom Brooks. When we arrived Tom Brooks went to the corner; then we ₜall went out to look for him; then I wanted to go down to the house where Luis had left some of my letters that day, so the others went on ahead of us to the house. We got to the house and they left some bundles there; I don't know what it was; I did not know what it was. A few minutes afterwards the policemen arrived; then Manual Lopez and Silvia told me not to open the door; then I said what was the reason they did not want me to open the door; I don't know anything; then I opened the door. When these other men were coming out of the tailor shop I was crossing the street from the saloon to the other corner. I did not know they were going to burglarize the tailor shop. When they went out I remained at the Toro saloon because it was cold and they had a fire in the saloon. I sat by the fire and then the bartender told me to get away. The others were out of there about half an hour. I did not see them any more until I was crossing the street. They went ahead and Luis Velarde, Tom Brooks and myself went behind, going to the room. They had bundles with them, the ones in front. I was not present when the lock was broken. I went back to that room to get some letters that Luis had left there, because we were going out that same night to Kansas City to work in a factory there; the letters I wanted were family letters. I never stopped in that room before that night, and never rented the room. When I came out of that house after the police came I had absolutely nothing with me. I did not see any of the others have anything either. This man Manual Lopez is not a friend of mine; he is mad at me because I opened the door. He told me not to open the door. Lopez said to me then that they would go out of the window and get away; that is the reason he did not want me to open the door, and Lopez is mad at me because I did open the door. I was not on the side of the street next to the tailor shop that night at all." Continuing the witness said: "I had none of the goods in my possession. I had never lived in that room a day before. I just happened to be going down there to get the letters. That is the first time I went to the room, that is the time when the police came. The letters got into the

room by Luis leaving them there in the care of Manual Lopez. I knew they were there because Luis told me they were there. I saw Lopez in the Toro saloon; then I sat down by the fire and the bartender told me to get away. I left the corner when they came out of the tailor shop; they had some bundles with them; three of them went into the tailor shop, or rather came out. I don't know how much goods were stolen. I didn't see anything. I didn't carry any of them. That day was the first day I got acquainted with Lopez. I had known Velarde about twenty-one days prior to that. I did not give him my letters; he got them because one night I was sleeping there in the room and my letters dropped out of my pocket and he picked them up."

Manual Gonzales, witness for the State, testified that he was a special officer of El Paso, and was with the officer Cooper on the night of February 17, when he went into a house in the lower part of town and found some clothes. The witness says if he saw defendant he does not know it on that night. Witness saw some pants patterns in the house covered up in a corner with a blanket thrown over them. He also found some goods under a pillow; they were covered up. All of these goods were afterwards taken to the police station. The goods were inside of the house, and all the parties were arrested and carried to the police station together with the goods. The officer Cooper made them pick up the goods and take them out of the house. This is the testimony in the case.

The question here presented is whether the testimony of the accomplice Lopez and Brooks is sufficiently corroborated; that is, does the testimony, outside of the testimony of the accomplices, tend to connect the defendant with the commission of the offense? After the burglary of the store the defendant goes in company with the other parties who confessed to the burglary from the place of the burglary to a house. They carry with them the stolen goods. They go into the house. In a short time the officers arrive, and find the appellant in company with the other parties, and find them in possession of the goods stolen. These goods were hid around and concealed from view inside the house. The officers arrested them and carried them to the police station with the goods. The appellant places himself in company with these parties in a saloon close to where the burglary occurs. He says his companions leave the saloon. He denies going into the house, but as he walks out he sees the other parties come out of the store with bundles, and he goes with them to the room. We think the facts as testified to by the officers as well as appellant's own testimony tends to connect him with the commission of the offense. No rule has ever been established or laid down by which the sufficiency of corroborating testimony may be established. Each case must rest upon its own peculiar circumstances, and being of the opinion that the testimony of the accomplices was sufficiently cor-

roborated, the court below therefore did not err in refusing to grant a new trial on this ground.

No other question being raised in the record, the judgment is affirmed.

*Affirmed.*